# MERRIMACK,

## JULY TERM, A. D. 1856.

### STATE *v.* RAND & *a.*

Where the accessary is tried alone before conviction of the principal, acts and conduct of the principal immediately following the commission of the offence, and tending to show that he committed it, are competent evidence to prove the guilt of the principal.

The indictment alleged that the principal broke and entered "a building called a bank, being the bank of the New-Hampshire Savings Bank in Concord." On trial it appeared that the Merrimack County Bank owned the building in which the Savings Bank had their banking rooms; that the owners occupied a distinct part of the building, entered by a separate outer door; that the Savings Bank had the exclusive occupation of their rooms, as tenants to the owners, and entered by another outer door, which also lead to the other rooms in the building occupied by tenants. No part of the building was occupied as a dwelling house.—*Held*, that the rooms occupied by the Savings Bank were properly described as their bank.

If the defendant, or his counsel, before trial knew of an objection to one of the grand jurors that found the indictment, and proceed to trial without making the objection, it is waived, and cannot be insisted on after verdict.

So if burglars' tools, found on the principal, are, during a recess of the court, while the cause is on trial, exhibited and their use explained in presence of one of the jurors, with the knowledge of the defendant and his counsel, and no objection is made until after verdict, the objection will be regarded as waived.

INDICTMENT containing two counts.

The first charges that the respondents, John W. Rand and Isaac H. Rand, on the 10th day of August, 1855, at Concord, in said county, in the day time, with force and arms, " a certain

building, called a bank, there situate, the same building being the bank of the New-Hampshire Savings Bank in Concord, unlawfully and feloniously did break and enter with intent," &c., to steal the moneys of the said New-Hampshire Savings Bank in Concord, in the bank aforesaid then and there being, and did steal the moneys, &c., of the said New-Hampshire Savings Bank in Concord, in the bank aforesaid then and there being. The second count charges the breaking, entering and stealing in the bank, as in the first count, by John W. Rand alone, and then charges Isaac H. Rand as accessory after the fact.

The indictment was found by the grand jury and returned into court on the 23d day of August, 1855, and on the 24th day of the same August the respondents were both arraigned and severally pleaded not guilty.

The indictment was continued from August term to February term, when Isaac H. Rand was tried alone ; John W. Rand having made his escape from jail, and not having been tried on the indictment.

At the opening of the trial the counsel for the respondent moved the court that the government be required to elect upon which count the trial should proceed, but the court denied the motion ; and thereupon the evidence was submitted and a verdict rendered upon the indictment generally ; but in argument the counsel for the government claimed a verdict against Isaac H. Rand upon the second count only, which charged him as accessory.

The government introduced evidence tending to show that the banking room occupied by the New-Hampshire Savings Bank was broken and entered, and moneys stolen therefrom, in the day time of the 10th of August, 1855 ; that at the time of the breaking the respondents were both in Concord, and in such a situation that they might have entered the bank ; that immediately after the money was taken they left Concord together, in a wagon, and drove to Hill's Corner, in Canterbury ; that Isaac left John at Hill's Corner, where John remained some hours, and Isaac drove on to his brother Joseph D. Rand's, in North-

field, where he arrived about dark and remained during the night; that Isaac returned to Hill's Corner the next forenoon about eleven o'clock, and was there arrested, and that John was arrested at Alton on the evening of the same day.

The government also offered evidence as to certain suspicious conduct and acts of John W. Rand at Hill's Corner and elsewhere, after the offence was committed, and before his arrest, not in the presence of Isaac H. Rand, tending to show that John W. Rand was guilty of the charges in the indictment, and also evidence that there was found in John W. Rand's possession, after his arrest, a printed paper purporting to be a statement of the condition of the New-Hampshire Savings Bank in July previous to the breaking, by which it appeared that there was a large amount of money on hand in the bank. This evidence was all objected to by the respondent's counsel as incompetent on the trial of Isaac H. Rand, but it was admitted by the court.

The court also admitted evidence tending to show that John W. Rand came to the Union Hotel in Concord on the day before the money was stolen, and entered his name upon the register of the hotel as " S. Hanson." Isaac H. Rand came to the same hotel the next day, and they left the hotel together in the same carriage very soon after the breaking of the bank. The respondent's counsel objected to the evidence of the entry in the hotel register as inadmissible on this trial of Isaac H. Rand.

The government also offered other evidence tending to show the guilt of both of the respondents, and also the guilt of Isaac as accessary after the fact.

The evidence of the government proved that the building where the money was stolen was three stories in height; that it was the property of the Merrimack County Bank; that it had two entrances from the outside, each entirely distinct from the other; that one of these entrances led to the room occupied by the Merrimack County Bank, and to no other part of the building, and that the other entrance led by an entry, common to the occupants, to the rooms occupied by the New-Hampshire Savings Bank, (which were in the first story of the building) and

also to a stairway communicating with rooms in the second and third stories over the New-Hampshire Savings Bank rooms and over the Merrimack County Bank room; that the second and third stories were occupied by various parties other than the Savings Bank, and for various purposes. All the rooms in the building, except the one occupied by the Merrimack County Bank, were leased by them to the parties that occupied them. There were no other means of communication with the upper stories of the building, or with the attic, except through the outside door and the entry by which access was had to the rooms of the New-Hampshire Savings Bank. The outside door, which led to the entry common to the Savings Bank and rooms and attic above, was generally kept open.

The counsel for the respondent objected that this was no sufficient proof that the building broken was the bank of the New-Hampshire Savings Bank in Concord, but the court ruled otherwise.

The jury found a verdict of guilty, and the counsel for the respondent moved to set it aside on the ground that incompetent evidence had been admitted, as before stated; but the court denied the motion. They also moved to set the verdict aside, on the ground that while the trial was pending, but when the court was not in session, one of the government witnesses exhibited to some of the jurors a set of burglar's tools, (and explained their uses,) which had been produced at the trial and put in evidence, the same having been found in the barn of Joseph D. Rand, a brother of the respondent, with whom he had been stopping; but it being made to appear to the court that the exhibition of the tools complained of was only an answer to a question put by some one standing by in showing how the witness supposed one or two of the tools might be used, immediately on the adjournment of the court, before the presiding judge had left the room, and while the witness was gathering the tools from the floor to take care of them, as requested by the State's counsel, and without the knowledge of the witness that any juryman was near; and it being also made to appear to the court that whatever took

place in regard to the tools was known both to the respondent and to two of his counsel at the time, and no exception being taken on that account until after the verdict, the motion was denied.

The respondent's counsel also move in arrest of judgment, on the ground that there was no sufficient evidence that the building broken was the bank of the New-Hampshire Savings Bank, as before stated, which motion was denied.

They also moved in arrest of judgment, on the ground that one of the grand jurors who found the indictment had, before the assembling of the grand jury, to wit, on the 20th of August, 1855, formed and expressed the opinion that John W. Rand was guilty of the crime charged in the indictment; but it being made to appear to the court that the bill was unanimously found by the grand jury, and also that the respondents and one of their counsel, before the arraignment and pleading to the indictment, and before the same was found by the grand jury, knew that the juror had so expressed his opinion, and no exception being taken on that account till after the verdict, the motion was denied and judgment rendered on the verdict.

The defendant, Isaac H. Rand, presented his bill of exceptions, which was allowed, and the case heard at the law term on the bill of exceptions.

*H. A. Bellows* and *Peabody*, for the defendant.

1. The fact that one of the grand jurors who found the indictment had previously formed and expressed an opinion that J. W. Rand was guilty, vitiates the indictment, and the respondent's motion in arrest of judgment should prevail. The grand juror was incompetent. *Commonwealth* v. *Knapp*, 10 Pick. 479; *People* v. *Vermilyea*, 7 Con. 108, 121; *People* v. *Jewett*, 3 Wend. 319; *People* v. *Mather*, 4 Wend. 229, 241; *People* v. *Rathbun*, 21 Wend. 509, 542; *Mima Queen* v. *Hepburn*, 7 Cranch 290; *Foxdale* v. *The State*, 9 Humphrey 411; *Childrees* v. *Ford*, 10 Smedes & M. 25; 1 *Burr's Trial* 38; 5 *Bac. Ab.*, Juries, E, 5; 1 Chitty's Cr. Law, Am. Ed., 309, note 1; and also page 544; Comp Stat., chap. 186, sec. 22.

2. The respondent could take advantage of this objection to the juror at any time. 1 Chitty's Cr. Law 309; 1 Hawk., chap. 25, sec. 26; *State* v. *Middleton,* 5 Porter 485; *Com.* v. *Davis,* 2 Pick. 559; *Vattier* v. *State,* 4 Blackf. 72; *Com.* v. *Smith,* 9 Mass. 110, note *a; Com.* v. *Parker,* 2 Pick. 563; *Rollins* v. *Ames,* 2 N. H. 249; *Barney* v. *State,* 12 S. & M. 68.

The position intimated in some of the cases that an objection of this sort must be made before the grand jury are empannelled, seems not founded in reason, nor, upon the actual rule, deducible from the decisions.

Objections to jurors are, first, such as do not affect their personal qualifications as competent, fair and unprejudiced men, but go only to some matter of form in the manner of selecting or empanelling them. Such objections cannot be raised after the jury are empanelled. *State* v. *Haskell,* 6 N. H. 360; *People* v. *Griffin,* 2 Barb. 429.

Second, such as go to the inherent competency of the juror, showing him to be biased, prejudiced and unfair, and not *liber et legalis homo.* Objections of this latter class, we submit, may be taken at any time. The injustice of a rule compelling a party indicted to object to the competency of grand jurors, is fully stated in the cases cited.

The facts stated in the bill of exceptions as reasons for denying the motion to arrest the judgment on account of the incompetency of the grand juror, seem to us insufficient.

The fact that the indictment was unanimously found does not relieve the case. In Hawk., chap. 25, sec. 28, it is said " that· if any one of the grand jurors who find an indictment be within any of the exceptions in the statute (11 Hen. 4) he vitiates the whole, though never so many unexceptionable jurors joined with him in finding it." *Barney* v. *State,* 12 Smedes & M. 68; Chitty's Cr. Law 309; *Com.* v. *Davis,* 557, 560; Bacon's Ab., Juries, A.

The incompetent juror might have influenced the decision of other jurors.

The fact that the respondents and one of their counsel knew

of the objection to the juror before pleading, and before the indictment was found, and proceeded to trial without making it, is not a waiver of the objection. In civil actions an objection to a juror may be so waived. But we submit that in criminal cases there is no waiver of any substantial right of the defendant by mere silence. He stands throughout on the defensive, and his prosecutors proceed at their peril. They have no right to call on him at any particular stage to approve of their proceedings, or else forego his constitutional right that none but qualified persons should be appointed to serve as jurors. We submit that no well adjudged cases are to be found in which it has been held that a prisoner waived substantial, vital, and constitutional rights by mere silence.

3. The exhibition of the burglar's tools in presence of some of the jury was calculated to prejudice their minds against the defendant. Courts will not allow jurors to be tampered with, or approached by improper influences, or in an improper manner. *Perkins* v. *Knight*, 2 N. H. 474 ; *Tenney* v. *Evans*, 13 N. H. 463 ; *Knight* v. *Freeport*, 13 Mass. 218 ; *Amherst* v. *Hadley*, 1 Pick. 38 ; *Cottle* v. *Cottle*, 6 ,Greenl. 140 ; 13 Johns. 487 ; *Coben* v. *Robert*, 2 Strob. 210, 240.

The reason of the rule is much stronger in criminal than in civil cases. *State* v. *Haskell*, 6 N. H. 363 ; Bac. Ab., Verdict, I ; Com. Dig., Pleader, secs. 44, 45.

The reasons and authorities adduced to show that there was no waiver of the objection to the grand juror, apply to this objection for exhibiting the burglar's tools.

4. On the evidence, the building was the building of the Merrimack County Bank and not of the Savings Bank. The whole building was owned by the Merrimack County Bank, and the entrance to the Savings Bank and the rooms in the second and third stories and the attic was a common entrance, and as the possession is presumed to be in the owner until the contrary is shown, the other must be regarded as in possession of the Merrimak County Bank. Regarding that part to which entrance was had by the door leading to the Savings Bank, as a distinct build-

State *v.* Rand.

ing, still, as part of it was in possession of the owner, it should have been laid in the indictment as the building of the Merrimack County Bank. In this respect the law in relation to burglary applies to this offence, except that the building need not be occupied as a dwelling-house. 2 East's Cr. Law 500–505; 4 Bl. Com. 225, 226; 2 Starkie's Ev. 323–327; *Lee* v. *Gansell*, Cowper 1, 7; 3 Chitty's Cr. Law 1075, 6, 7, 8; Kelyne 84; Wharton's Cr. Law 518, 520; Leach 273; 3 Greenl. Ev., sec. 81; 1 Russell on Crimes 817, 818, 819.

On trial of the respondent as accessary, it was necessary to prove the guilt of the principal by competent evidence, and the confessions of the principal were not competent for that purpose. 1 Russell on Crimes 42; *Rex* v. *Turner*, R. & M. C. C. R. 347; 1 Levin 119, 121; *State* v. *Newport*, 4 Harrington 567.

So in the case of co-conspirators: 2 Starkie's Ev. 53, 4; 1 Greenl. Ev., sec. 233; 1 Phillips' Ev. 97, 98, 115; 24 Howell's State Trials 452, 475; Kelyne 18, note 5; 2 Cowen's Phil. Ev. 177, 8; *State* v. *Paul & Laomia*, 1 Hawks 442.

The suspicious conduct of John W. Rand, being attempts to escape and disguising of his person, and the paper found on his person after the arrest, are in the nature of narratives of what was past, and so hearsay, and are not acts or parts of acts for which Isaac H. Rand was responsible. 1 Greenleaf's Ev. 233.

The case of a party indicted as a conspirator stands on the same ground; and neither the acts nor declarations of a co-conspirator, after the facts with which the defendant was connected, are evidence to prove the conspiracy. The suspicious acts and conduct of John W. Rand consisted of efforts to escape, and in disguise of his person on the day when the offence was committed and the day after. The acts constituting the offence were complete and ended, and the conduct of the principal may have been feigned in order to bring the defendant into trouble. 3 Greenl. Ev., sec. 94; *Rex* v. *Murphy*, 8 Carr. & P. 297; *Rex* v. *Shellard*, 9 Carr. & P. 277; Roscoe on Ev. 53.

*Sullivan,* Attorney General, and *George,* Solicitor, for the State.

PERLEY, C. J. Our ·statute, which authorizes an accessary to be tried and convicted either before or after the conviction of the principal offender, doés not undertake to introduce any new rule of evidence. When the accessary is tried before conviction of the principal, the guilt of the principal is a material fact for the prosecution to establish, and must be proved by competent evidence. The principal is not a party, and his admissions or declarations cannot be received against the accessary, who is on trial. In this case the confessions of John W. Rand, the principal, would not be competent to prove any part of the case against the defendant, who was tried as accessary. 1 Russell on Crimes 42.

Evidence of certain suspicious acts and conduct of the principal after the commission of the offence, and not in presence of the defendant, was admitted on trial. If this is to be regarded merely as confessions of John W. Rand that he was guilty, it was not competent on trial of the accessary.

The case does not show in what the suspicious act and conduct of John W. Rand consisted, though it is stated in argument that they consisted in attempts to escape, and in disguising his person; nor does the bill of exceptions fix with exactness the time to which this evidence applied, though the arrest appears to have been made in the forenoon of the day after the offence was committed, and the suspicious acts and conduct to have been before the arrest. The bill of exceptions contains the case of the defendant, as drawn up and presented by him, and we are not at liberty to infer that any circumstances existed not stated in the bill, to explain the suspicious acts and conduct of John ·W. Rand. We must understand that they were such as, taken by themselves, had a natural connection with the commission of the offence, and tended fairly to show that John W. Rand was guilty, because his conduct was such as a man guilty of the offence would naturally pursue, and such as would be unusual and extraordinary in one innocent of the crime.

State *v.* Rand.

The acts and conduct of a defendant, preceding the commission of an offence, leading to it and directly connected with it, such as his examination and inspection of the place, and his preparation and possession of the means and instruments used in the commission of the crime, are competent evidence to prove his guilt. And such evidence is not in the nature of an admission or confession, for no crime has then been committed. And so what naturally and usually follows immediately on the commission of a crime — the act of flying and escaping from the place, concealment and disguise of the person, and other acts and conduct of the like character, such as, in themselves, naturally imply connection with commission of the crime — are evidence of guilt, not so much in the nature of confessions and admissions, as because they are the usual and habitual concomitants of the crime on trial. The transaction investigated on the trial, the *res gestœ,* consists, not merely of the direct criminal act, which constitutes the legal offence ; the necessary preparations for the perpetration of the crime ; the arrangements for escape ; the act of escaping ; concealment and disguise of the person, and other similar acts and conduct, are all parts of the transaction, such as common experience shows naturally belong to the crime, and are habitually connected with the commission of the offence. In this point of view we think the acts and conduct of John W. Rand, immediately following the commission of the offence, as stated in the bill of exceptions, were competent evidence to prove his guilt on trial of the accessary.

If the suspicious acts and conduct had been long after the crime was committed, and after John W. Rand had been accused as the guilty party, the case would have presented a different question. But the evidence does not extend beyond the forenoon of the day after the offence was committed. At that time no accusations appear to have been made against John W. Rand, and the case does not show that he had the means of knowing that the crime had been committed, unless he had committed it himself.

The paper stating the amount of cash in the bank the jury

would be at liberty to presume was in the hands of John W. Rand before the bank was robbed, though found on him afterwards. If so, it would be evidence that he had furnished himself with information that the money, which was afterwards stolen, was in the bank. Where and how could he obtain the paper, and for what purpose, between the time when the bank was broken open and his arrest on the next day ? To ascertain the probable amount of plunder would be one of the arrangements for the commission of the offence. In this view we think the evidence was competent.

There were two out-door entrances to the building in which the Savings Bank was kept, one leading to the rooms occupied by the Merrimack County Bank, the other to the rooms of· the Savings Bank and other parts of the building. All the rooms except those occupied by the Merrimack County Bank, as their banking rooms, were leased and occupied by tenants. The part occupied by the Merrimack County Bank was separated from the rest of the building by a partition, and had no connection with the other parts, except by the other outer door.

On this state of facts the Savings Bank had exclusive possession of their rooms for their bank, and entered them by an outer door, which was used by them in common with the occupants of other rooms in that part of the building. The Merrimack County Bank had no possession or control over this common entrance. The possession by the Savings Bank of their rooms was as exclusive and independent as if they had occupied the whole of a separate building, and their right to use the common out-door entrance in connection with their rooms, as perfect and complete as if that entrance had led to no other rooms ; and their rooms were in fact and substance as much their bank as if they had hired and used the whole of a separate building for the same purpose, and we think were properly described in the indictment as their bank. 1 Russell on Crimes 817.

Most of the authorities on this question relate to burglary at common law for breaking and entering a dwelling-house in the night time, in which the essence of the crime is the violence

offered to the dwelling-house ; and the rule that where there are several occupants of a house, it must be described, in an indictment for burglary, as the house of the general owner, would seem to be limited to cases where the owner *dwells* in part of the house. His mere occupancy of a part for another purpose than a dwelling-house will not prevent another part, exclusively occupied by a tenant, from being described in an indictment for burglary as the dwelling-house of the tenant. 2 East Cr. Law 506 ; 1 Russell on Crimes 817.

And where the general owner merely occupies some part of a building as a place of business, and does not inhabit or dwell in the building, his occupation, in reference to the statutory offence of breaking and entering the building, does not differ from a like occupation of another part by a tenant.

Where there is one common out-door entrance to a dwelling-house, though there may be several occupants of different parts, the law regards it as one dwelling-house. The peculiar protection which the law affords to the dwelling-house does not extend to the interior partitions and doors, but is confined to the outer doors ; and where the owner dwells in part of a house, which has an out-door entrance used in common by him and the occupants of other parts, the law regards the whole house as his, and requires it to be so described in an indictment for burglary. The reason of this rule would not seem to apply where the owner and different tenants have a like occupation in different parts of a building not occupied as a dwelling-house.

The objection that the defendant was tried on the two charges contained in the counts of the indictment, is not insisted on and cannot prevail.

The exception to the grand juror was known to the defendant and one of his counsel before the trial, and should have been taken then, if it was intended to insist on it, and must now be considered as waived. *Rollins* v. *Ames,* 2 N. H. 351 ; *Fenalty* v. *The State,* 7 English 630.

Regularly, an objection to one of the jurors that found an indictment, should be taken by plea ; and such plea is in the

nature of a plea in abatement; it does not answer to the charge made by the indictment, but declines to answer it on the ground that the charge is not legally made. *Sir William Withipole's Case*, Cro. Car. 134; Bacon's Ab. (Juries, A.)

The court give no time for pleading such a plea, and it seems the better opinion that no exception against an indictor is allowable, unless the party takes it before trial. Bacon's Ab., Juries, "A." If the objection is not made at the proper stage in the proceedings, it must, as in other cases, be considered as waived. And so as to the exhibition of burglar's tools, the objection should have been made at the trial, and, not having been made, was waived.

*Judgment affirmed.*