STATE v. BRADFORD.

STATE v. HOYT.

*Grand jurors— Venires—Practice.*

A writ of *venire* need not be under the seal of the court, nor bear teste of the chief, first, or senior justice.

The presiding justice may excuse grand jurors for reasons which appear to him satisfactory, and may reject grand jurors where the requirements of the statute in drawing the same have not been observed, and the exercise of such discretion will not ordinarily be revised.

FROM STRAFFORD CIRCUIT COURT.

INDICTMENTS, found at the February term, 1876, against the respondents, severally, for selling spirituous liquors in violation of the statute. The *venires* were not under the seal of the court, and did not bear teste of the chief, or of any other justice of said court. They were signed by the clerk, who certified that they were issued by order of the court.

There were twenty-one grand jurors summoned and returned, all of whom answered to their names.

It appeared from the return on the *venire* for the town of Rochester, that there was an informality in the drawing and return, and the persons summoned from that town were excused on motion of the attorney-general.

It appeared from the return on the *venire* for Somersworth, that the clerk did not give the notice required by law, and that one of the persons returned as a grand juror was exempt by reason of having served on the jury within two years last past, and the jurors returned were excused on motion of the attorney-general.

It appeared from the return on the *venire* from Madbury, that the notice of the drawing was insufficient, and on the motion of the attorney-general the juror from that town was excused. The juror from Durham was excused on the motion of the attorney-general, he being by law exempt from serving on the jury. The panel, as finally made up, consisted of sixteen.

Bradford, upon being arraigned, before pleading, moved to quash the indictment, and argued the following reasons :

1. Because the grand jury which found said indictment was not drawn and summoned in accordance with the requirements of law and the directions of the court.

2. Because no grand jurors, at the time when said indictment was found, were legally summoned from the towns of Rochester and Somersworth, in said county, as required by law and order of court.

3. Because the grand jurors, duly summoned and in attendance at said term from said towns, were excluded from the grand jury and its deliberations when said indictment was found, all of which appears by the records of the court.

4. Because the *venires* issued by the clerk for summoning said grand jury were not under seal, and were not in accordance with the provisions of article 87 of the constitution, and section 2 of chapter 203 of the General Statutes of this state. The court denied the motion, and the respondent excepted.

Hoyt, upon being arraigned, before pleading, moved to quash the indictment, because said *venires* were not under seal, and were not in accordance with the provisions of article 87 of the constitution, and section 2 of chapter 203 of the General Statutes. The court denied the motion, and the respondent excepted.

If material, it is admitted that both respondents had been bound over for their appearance at said term of court. No question of discretion was reserved.

The questions arising upon the foregoing rulings were transferred to this court by STANLEY, J., C. C.

*T. J. Smith,* solicitor, for the state.

Is the *venire* such a writ as is contemplated by article 87 of the constitution, and ch. 203, sec. 2, of the Gen. Stats. ? If so, these *venires* were fatally defective ; but we submit that the *venire* is not such a writ.

As used in our statutes, this term is the name of the writ issued by the clerk of the court, directed to the sheriff or other officer, commanding him to cause to come before the court, on a specified day, from the towns specified, a certain number of persons qualified to serve as jurors. Here it is directed to the town-clerk, and he is required to return it to the clerk of court, as was done in this case. Now this precept is called a writ, but it does not partake of the characteristics of the process by which an action is commenced, any more than any other order of the court, or the warrant for a town or school district meeting, to which the name writ is sometimes given ; nor does it belong to that class of processes. Indeed, it appears that it has been so esteemed by the legislative power of the state during all the period of our history, for that power has never provided for it a form, as it has done for all writs in frequent use,—while it has provided that it shall be issued by the clerk of court and returned to him, notwithstanding the constitutional prohibition against the clerk's drawing any writ originating a civil action. See art. 82.

Now, if the *venire* is a writ in the real significance of that term as used in article 87, it must be not only under seal, but must bear teste, for the constitutional injunction is, " all writs issuing out of the clerk's office," &c. But the legislature has declared that the clerk shall issue writs of *venire,* as well as authorized him to issue writs of summons to witnesses ; that is, he shall draw the former, and in proper cases may draw the latter, while he cannot draw a writ originating a civil action. Now, in practice, it is true that the writ, originating a civil action in assumpsit, debt, case, and trespass, is sealed and signed by the clerk, and issued in blank to attorneys of the court ; yet no one has become so wise beyond his fellows as to suppose that the clerk has drawn any such writ, nor will any one so claim. There are, then, classes of processes called writs, which the clerk may draw, and other classes of writs which he may not draw. Are all classes " writs issuing out of the clerk's office " ? But, suppose it is admitted that the clerk may draw some, and not others, and still asserted that whether drawn by him or not they must all be under seal, bear teste as being forced thereto by the position which they occupy, it must be by these respondents. Our answer is ready. Such has not been the practice in New Hampshire, and such has not been and is not now the requirement of the legislature, and its attention has been specially directed to this subject. This is made certain by the fact that the legislature has provided that the

clerk of court may issue writs of summons to witnesses in all cases pending therein, and then provided a form for such writs : by this form the writ is to be sealed, but it does not bear teste. It does not then answer the constitutional requirement ;—if that is applicable, the form is fatally defective. We assume, however, that no one will claim that it is thus defective, and simply because the term writ, as used in the constitution, does not apply to this class of precepts. There are, then, other precepts, called in the statutes writs, than those referred to in article 87 of the constitution ; that is, the legislature may authorize the clerk to issue precepts interfering with the pleasure and person of the citizen, and stamp the same with the signet of legality, although they do not have all the requirements which the constitution has provided for " all writs " issuing out of the clerk's office.

Now, turning to the statutory requirements—sec. 2, chap. 203—for writs and processes, it will be observed that it is in regard to such as are " returnable to any court, while the requirement as to the *venire* is that it is ' to be returned to the clerk,' " which we submit marks a distinction between it and such processes as must be under seal, bear teste, &c.

Again : had the legislature desired to require that this precept should be under seal, we doubt not its power to do so ; and had it intended to so require, it could very easily have done so, and we imagine would have established a form to that effect. We urge this as a significant fact. Forms are established for the writs in common use in the statutes (ch. 203), but these do not include the *venire* or summons to witnesses. Is there any reason why not ? We say it is to be found in the fact that they are not processes by which an action is commenced, and that this is a sufficient reason for the neglect. True, later in the statutes is the form for the subpœna, providing for the seal, but nowhere is there a form for the *venire* established by the legislature.

On the contrary, it is treated as an order of the court simply, and, as such, needs a seal no more to insure its validity, than the order issued upon the county treasurer for the payment of the jury pay-roll. Indeed, we can imagine no reason why it should be sealed, arising from the character of the precept itself or the purposes for which it is used, and particularly so when there is no requirement of the statutes that it should be ; and the fact that it is called a writ is of no real importance, since, if it proves anything, it proves too much. This fact would show just as conclusively that it should bear teste as that it should be sealed, and applies to the subpœna as well as the *venires.*

We submit, as we have already shown, that it does not apply to the former ; it proves nothing in regard to it ;—neither should it, as regards the latter.

The practice which has obtained is in accordance with the views which we urge. It is true that the practice may have been wrong, but having been followed for so many years, and under the various changes of our judicial system, we suggest it as proper to be considered as indicating what the wisdom of the past has deemed essential. What

the patient investigations of vigilant and able counsel, in defending against the charges of burglary, arson, rape, and even murder, have overlooked for years, comes to hand now to aid a party charged with the very common offence of selling liquors.

A careful examination of the records in several of the counties discloses that there has been no general practice observed as to the *venires* bearing the seal of the court, and they have never borne teste. The practice then indicates that the *venire* has not been esteemed a writ under the constitution or the statutes, but simply an order of the court issued by the clerk under their directions.

But, again, the statute not making any provisions for the sealing of the *venire*, it may properly be assumed that it is not necessary to its validity; indeed, it is much questioned whether the warrants issued by a justice of the peace on complaint of a violation of the criminal law need be under seal, unless so required by the statute. Chitty, 1 Crim. Law 38, says,—" It is generally laid down that the warrant ought to be under the hand and seal of the justice who makes it, but it seems sufficient if it be in writing and signed by him, unless a seal is expressly required by a particular act of parliament." And in South Carolina it has been held that a warrant of commitment without seal is sufficient, there being no statute provision to the contrary. *State* v. *Vaughn*, Harper 313. So our court, through RICHARDSON, C. J., in *Davis* v. *Clements*, 2 N. H. 390, determined that " the warrant from selectmen to a surveyor of highways, to collect highway taxes, need not be under seal; and, in the opinion, that distinguished jurist makes use of the following language : " It seems now to be well settled that a seal is not essential to the validity of a warrant, unless made so by statute." And in *Thompson* v. *Fellows*, 21 N. H. 425, Justice BELL gives voice to the same opinion ;—so that we say, whatever may be the rule elsewhere in New Hampshire, a seal is not essential to the validity of a precept under which the property of a citizen is taken by distress, even unless so required by statute ; much less is it essential to the validity of a precept under which he may be required to devote a portion of his time only to the public good.

In this connection we cite, also, *Maher* v. *State*, 1 Port. 265, wherein the court say that under the common law of Alabama a seal is not essential to the validity of a writ of *venire*.

The court of Maine, however, hold otherwise, in *State* v. *Lightbody*, 38 Me. 200. This case appearing to be much relied upon by counsel for respondents, and an authority directly against us, we have looked for its foundation ; and an examination of the statutes of that state seems not only to discover the reason of this holding, but as well the fact that this case—and it is the only one so holding that we have been able to find—is not an authority against the view which we are urging.

Sec. 4, ch. 77, of the Maine Statutes, is as follows : " It [the supreme judicial court] may issue writs of error, certiorari, mandamus, prohibition, quo warranto, and all writs and processes necessary for the furtherance of justice or the execution of the laws, in the name of the state

of Maine, under the seal of the court, attested by any justice not a party or interested in the suit, and signed by the clerk," and then provides for the issuing of *venires*, by order of the court, for the drawing and summoning of jurors. Certainly a *venire* is a precept necessary for the furtherance of justice and the execution of the laws, and, being such, is required by statute to be under seal;—and the decision of the court in *State* v. *Lightbody* simply follows the express requirements of the statute. We say, furthermore, that but for this statute, the *venire* in Maine would be valid without seal, as is clearly evinced in *State* v. *McNally*, 34 Me. 210, where the court say,—" It is not necessary that a magistrate's warrant, issued upon a penal statute, should be under seal, unless the statute expressly requires it. It is the statute, then, that requires the *venire* in Maine to be under a seal; and the tenor of the authorities in that state is entirely in accord with our own.

We conclude, then, by saying that our statutory provisions in regard to writs refer to the same class of processes as are spoken of in the constitution,—to wit, those by which a civil action is commenced,—and the formalities required are essential to their validity; that the legislature may provide for the issuing of other precepts with less formality—and those only are essential to their validity—and has done so in the case of the subpœna; and that the same power may authorize others still with no formality, and has done so in the case of the *venire;*—and having authorized the clerk, upon order of the court, to issue that precept, and not having required that it should be under seal, such an attachment is not essential to its validity.

And now, in regard to the first three objections taken in Bradford's case, briefly, we say, we know of no statute provision which determines the requisite number of the grand jury in this state. The common law rule applies, however, and any number between twelve and twenty-three will suffice. Here twenty-one appeared. Some were excused, but sixteen remained. The requisite number, then, were present, and acted. And as to those excused, no matter for what reason, having been done by the court, the respondent has no legal ground of complaint;—and even if the court should err in excusing the jurors summoned, the respondent cannot avail himself of the error so long as nothing has transpired to deprive him of his substantial rights under the common law and constitution,—while here the excused were persons only who were illegally drawn, or who were exempt from service; and the common law number was, notwithstanding the excuses, preserved. 1 Chitty's Cr. Law 311; *State* v. *Forshner*, 43 N. H. 89; *State* v. *Pike*, 49 N. H. 399; *State* v. *Osgood*, 18 Iowa 435; *State* v. *Ward*, 39 Vt. 224; *People* v. *Lee*, 17 Cal. 76; *Deming* v. *State*, 22 Ark. 131; *Cotton* v. *State*, 31 Miss. 504.

While submitting, then, that the grand jury by which these indictments were found was a legal body, we pass to consider the second general question involved.

It may be said to be the settled law in this country, that the same rules are to determine the competency of the grand as the petit jury, and

that a party must take advantage of any cause of challenge to a petit jury when the same is empanelled, or he cannot avail himself of it afterwards. 1 Bish. Cr. Pr., secs. 852, 932.

And the right of challenge to the jury, or any member thereof, for cause, is everywhere recognized. The challenge would be to the array, if the objection relates to the entire panel, but to the poll when it relates to the impediment of a single juror. In the case at bar the objection relates to the entire panel ; and a party who has been held to answer to the action of a grand jury is entitled to interpose in its organization. So, where the objection goes to the manner of drawing or summoning, it should be taken by challenge to the array, or it will be waived, provided only that the party has had an opportunity to avail himself of his right ; but when the respondent has had no opportunity to challenge, as where he has not previously been informed that the grand jury were to inquire and examine complaints against him, or the court refused to recognize his right to challenge, he is allowed to take advantage of any such irregularity by motion to quash or by plea in abatement, as the case may be. Such is the general American doctrine, and it corresponds, also, with the English rule. 1 Bish. Cr. Pr., sec. 878 ; 1 Whart. Cr. Law, sec. 274 ; *Cone* v. *Smith*, 9 Mass. 107 ; *People* v. *Jewett*, 3 Wend. 314 ; *U. S.* v. *Blodgett*, 35 Ga. 336 ; *Chase* v. *State*, 46 Miss. 572 ; *Vanhook* v. *State*, 12 Tex. 252 ; *State* v. *Brooks*, 9 Ala. 10 ; *People* v. *Roberts*, 6 Cal. 214.

And the doctrine of waiver is in full force in New Hampshire. Here, an objection will be regarded as waived when a party has had an opportunity to make it and has failed to do so ; and in this case the ground of objection appeared upon the *venires* on file with the clerk, and operated as notice of record to all persons. *Burnham* v. *Goffstown*, 50 N. H. 560 ; *Prebles* v. *Rand*, 43 N. H. 337 ; *Gilmanton* v. *Ham*, 38 N. H. 108 ; *Warren* v. *Glynn*, 37 N. H. 390.

If the respondent was held to answer before the grand jury is empanelled, he must challenge the panel when first made. *People* v. *Beatty*, 14 Cal. 566.

In *State* v. *Haskell*, 6 N. H. 352, one exception taken by the respondent was, that a juryman upon the panel that tried the case was drawn more than twenty days before the time when the *venire* was returnable ; and the court say,—" This would have been a sufficient exception against that particular juror if it had been taken before the trial. But it is now too late. The *venires* are uniformly returned into court, and any party can have access to them and examine the returns before his case comes on for trial. If he omits to do this, he must be considered as waiving an exception of this character."

So in *State* v. *Rand*, 33 N. H. 216, one exception was, that one of the grand jurors had formed and expressed an opinion that the respondent was guilty, before the assembling of the jury. It appeared, however, that the respondent knew this fact before the indictment was found, and Chief Justice PERLEY, speaking for the court, says,—" The exception　*　*　should have been taken before the trial, if it was

intended to insist upon it, and must now he considered as waived. * * * If the objection is not made at the proper stage in the proceedings, it must, as in other cases, be considered as waived."

It is true that these cases from our own reports go no further than to say that the exception should be taken before trial, the one being as to a juror who tried the case, the other as to a juror on the panel which found the indictment; but it is significant that, in the latter case, which more nearly resembles the present, the court say, if the objection is not taken at the proper stage, &c., it must be considered as waived. What is the proper stage ? Can it be other than the empanelling of the jury ? We say not. Indeed, we are able to conceive of no legal principle which will allow a party cognizant of a valid objection to a grand juror, or the entire panel, to keep silent until that body has acted, and then avail himself of it, any more than in reference to the petit jury. To us it appears certain, that having the same right to challenge the one as the other, the same rule must govern his right to exercise it,—the natural and legal presumption of his silence being, in both cases, that it is waived altogether, unless presented at the first opportunity. Such is the rule as to the petit jury ; why not as to the grand ?

We submit, then, that, assuming that the want of a seal to the *venire* is sufficient to render the writ void, after the jury have appeared, been empanelled, and acted without objection, it is too late for a respondent, who was aware that they were to inquire as to complaints against him, to take advantage of it. He has waived his right, whatever its effect might have been if seasonably taken.

*G. W. Burleigh*, for Hoyt.

The statute is peremptory that the clerk of the supreme court shall issue " writs of *venire facias* " for the drawing of jurors ; and the burden of proof is upon the state to show that these technical words, which have acquired a peculiar and appropriate meaning in law, shall not be construed and understood according to such peculiar and appropriate meaning, nor according to the common and approved usage of the language. Gen. Stats., ch. 1, sec. 2.

This precept, both in name and form, is as old and well known as organized English courts for trial by jury—Stephen on Pleading, pp. 115, 154 ; Jacobs' Law Dic., tit. Jury ; and it is difficult to see why the legislature should have used the name without intending the thing named.

The New England colonists so far changed the English law relative to jurors as to provide for their election in town-meeting, instead of continuing their selection and return by the sheriff. The writ of *venire* was accordingly directed to the town-clerk rather than to the sheriff. In requiring the clerk to issue a *venire* (Prov. Laws), or a precept (Stat. of 1791), or a *venire facias* (Stat. of of 1827), or writs of *venire facias*, to the town-clerk, what possible ground is there for inferring

an intent not only to change the officer to whom it should be directed, but to substitute for the ancient and familiar precept, properly designated by name, a new nondescript and mongrel specimen of chirography of no higher species than the clerk's order to the stationer for a ream of legal cap, or his order in the stage-book for the coachman to call for the judge? Had no change been made in the method of selecting jurors, it is highly probable, considering the conservative notions always prevalent in this state relative to enacting the common law into statutes, that the legislature would have been silent on the subject. The only object of this clause in the statute must have been simply to designate the person to whom, under the new order of things, the old English *venire* should be directed.

But it is contended, that, although it used the name, the legislature did not intend that the *venire facias* should after all be a writ, (1) because "it does not partake of the characteristics of the process by which an action is commenced," and (2) because the legislature "has never provided for it a form, as it has done for all writs in common use."

This argument proves too much. There are many precepts in common use by which no actions are commenced, and for which the legislature has provided no form, which are nevertheless unquestionably writs,—such as writs of error, review, mandamus, certiorari, injunction, &c., and all mandatory writs; and the legislature recognizes the fact that there are writs in use for which it provides no form, by requiring that "in cases where no form of process is prescribed, the process shall be made comformable to the forms prescribed so far as the nature of the case will admit." Gen. Stats. ch. 203, sec. 5. Can any valid reason be given why writs of *venire facias* should be made an exception to the statute?

Much stress is laid upon the fact that the legislature has provided a form for the writ of subpœna in which the constitutional requirement of the teste is omitted; and it is hence argued that the legislature, in calling it a writ, did not regard it as such within the meaning of the constitution; that in fact it is not a writ.

But neither in terms nor in practice is the subpœna returnable to the court, and therefore the constitutional requirement that it shall bear teste of the chief-justice of the court "to which the same may be returnable," is inapplicable; and the omission of both the order of return and the teste is suggestive.

It is also contended, that, because the warrant of a justice of the peace possibly need not be under seal, one is not required on a writ. Neither the constitution nor the statute gives any form for a warrant, and a warrant is not a writ.

If trial by jury is an important safeguard to liberty, it is equally important that no careless, questionable, slipshod method should be tolerated in the selection or return of the jurors. The people and the legislature have done their part to prevent it, with the confident expectation that no court will degrade its own process.

In the English practice the *venire* is part of the "process," one of

the intermediate proceedings between the original writ and the execution. A jury is awarded or not, at the discretion of the court. If awarded, the *venire* is a judicial writ under the seal of the judge, and becomes a part of the record in that particular cause. By our practice the writ of *venire* is not " process." It is compulsory upon the clerk to issue it, even before it is known that a single cause is to be tried. The only discretion that the court exercises with reference to it is, to determine the number of jurors from each town. It is therefore not a judicial writ, but an original, analogous to the original writs issuing out of chancery, and, if returnable within the meaning of the constitution, should present all the formalities required by that instrument. It must have a seal, for there is no such thing as a writ without one. That the seal has sometimes been omitted in this county only, is no proof that such omission is proper. *Non debet adduci exceptio ejus rei cujus petitur dissolutio.*

Upon principle and authority the objection is seasonably taken. 1 Bishop Crim. Pro., ch. 59, secs. 883, 884, 889. " When men are without authority, no person is bound to appear and except to their want of authority. *Ib.*, sec. 883, note.

The party bound over has no standing in court until he is indicted. Such is the tenor of his recognizance, for the first order he is called upon to abide is to answer to his name and listen to the indictment. If in custody, he is not brought in till then. If the case is one in which the court assigns counsel, that is the time it is done. If the theory of the state is correct, counsel should be assigned before the grand jury is empanelled, otherwise the prisoner loses his undoubted right of challenging a grand jury, which, in the supposable case of a political offence, or one involving great party rancor, might by corrupt connivance, in a small county like this, be specially "organized" to indict. PERLEY, C. J., in *State* v. *Rand*, 33 N. H. 228, states the time and method of making the objection. " Regularly, an objection to one of the jurors that found an indictment should be taken by plea, and such plea is in the nature of a plea in abatement. It does not answer to the charge made in the indictment, but declines to answer it on the ground that the charge is not legally made ;—see authorities quoted by him.

As the solicitor suggests, the respondent greatly relies on the case of *State* v. *Lightbody*, 38 Me. 200. It is directly conclusive upon all the points in this case, and should have greater force here, because the regulation of writs, which in that state is only a matter of statute, is made part of our fundamental law.

*Copeland*, for Bradford.

SMITH, J. By article 87 of the constitution, " all writs issuing out of the clerk's office in any of the courts of law shall be in the name of the state of New Hampshire, shall be under the seal of the court whence they issue, and bear teste of the chief, first, or senior justice of the court ; but when such justice shall be interested, then the writ shall

bear teste of some other justice of the court to which the same shall be returnable; and be signed by the clerk of such court." Similar provisions are contained in Gen. Stats., ch. 203, sec. 2.

If a *venire* is such a writ as is contemplated by the constitution, then the *venires* issued in these cases were fatally defective, the language of the constitution being explicit, that *all* writs issuing out of the clerk's office shall be under the seal of the court, and bear teste of the chief or senior justice.

An examination of the files in the clerk's office for Strafford county discloses that from 1775 to 1815 *venires* were under the seal of the court; and that from 1815 to the present time they have borne the seal of the court in the years 1846, 1855, 1856, and 1857 only.

In Hillsborough county, from 1771 to 1800, *venires* were under seal; from 1800 to 1840 they were generally, but not always, under seal; from 1840 to 1858 they were not under seal; since 1858 they have been under the seal of the court.

In Rockingham and Cheshire counties, for over one hundred years the *venires* have generally been under the seal of the court; but in none of the counties of the state, so far as an examination has been made, have the *venires* ever borne teste of the chief or any other justice of the court.

If the framers of the constitution, in 1792, intended to include writs of *venire* under the provisions of article 87, it is unaccountable how the practice for the twenty years immediately preceding, and for the eighty-four years subsequent to that time, has uniformly been opposed to those provisions. The fact that such writs have never borne teste of the chief or senior justice of the court, and for a large portion of the time have not been under seal, has the force of a practical contemporaneous exposition; and the construction thus given and acquiesced in affords very strong ground for holding that by the term writ, as used in the constitution, is meant that class of writs of mesne process by which civil actions are commenced, and writs of execution by which the judgments of the court are executed. The *venire*, although technically called a writ, is rather an order of the court issued to the several town-clerks, directing and empowering them to select the requisite number of persons to serve as jurors. So the precept issued by the governor for an election to fill a vacancy is sometimes called a writ. So, also, the warrant for a town or school district meeting, and a warrant for the collection of taxes, are sometimes spoken of as writs. But they have no resemblance to the precept usually called a writ, whereby an action is commenced or the judgment enforced.

No exception lies to the action of the court in excusing certain jurors. None were excused except such as the respondent claims were illegally drawn; and the court has so long exercised the power of excusing jurors for reasons that have been deemed satisfactory, without its power so to do being questioned, that it must be regarded as firmly settled that the court has such power, and that the exercise of it in the discretion of the court will not ordinarily be revised.

Ladd, J., concurred.

Cushing, C. J.   In Hawkins's Pleas of the Crown, B. 2, ch. 25, sec. 16, it is said,—"It seems that one who is under a prosecution for any crime whatsoever, may, by the common law, challenge any of the persons returned on the grand jury,—as, being outlawed for felony, &c., or villeins, or returned at the instance of a prosecutor, or not returned by the proper officer, &c."

In 1 Wharton's Criminal Law, sec. 468, it is said that "irregularities in selecting and empanelling the grand jury, which do not relate to the competency of individual jurors, can in general only be objected to by challenge to the array;" and in section 469,—"When a person who is disqualified is returned, it is a good cause of challenge, which may be made by any person who is concerned in the business to come before the grand jury.   The same objection which may be made by challenge to a petit juror may be made to a grand juror.   In New York, while it is said to be a good cause of exception to a grand juror that he has formed and expressed an opinion as to the guilt of a party whose case will probably be presented to the consideration of the grand inquest, it is added that such exceptions must be taken before the indictment is found, and will not afterwards be heard."

In *State* v. *Haskell*, 6 N. H. 352, an exception, that a juryman upon the panel that tried the case was drawn more than twenty days before the *venire* was returnable, was overruled as not seasonably taken. The court say,—"The *venires* are uniformly returned into court, and any party can have access to them and examine the return before his case comes on for trial.   If he omits to do this, he must be considered as waiving an exception of this character."

In *State* v. *Rand*, 33 N. H. 216, the exception, that one of the grand jurors had, before the meeting of the grand jury by whom the indictment was found, formed and expressed the opinion that the informant was guilty, was overruled as not seasonably taken, it being made to appear that the respondent had knowledge of this before the trial.   It hardly admits of a doubt in my mind that if this fact had been known to the respondent before the grand jury was empanelled, it would have been held to be waived if not taken then.

The objection to the *venires* seems to me to be in fact frivolous, as I cannot conceive of any way in which the respondent could suffer, or the course of justice be hindered, by the want of a seal.   It has long been held that the teste is matter of form.

The *venires* are always returned into court before the empanelling of the jury, and are accessible to the parties and their counsel; and I can see no reason why, if such objections are intended to be taken by persons who are under prosecution, they should not be held to be waived if not taken before the empanelling of the jury, or at least before the finding of the indictment.

The other objection, that certain of the persons drawn as grand jurors were excused on motion of the prosecuting officer, may, I think, be disposed of in the same way.

All that was done publicly might and ought to have been known to all parties who had any interest in the constitution of that grand jury, and ought, therefore, to be held to be waived if not taken at the time.

While parties who are under prosecution for crime ought to be allowed every reasonable opportunity to object to everything in the proceeding which can possibly be injurious to their rights, they ought to be held to the exercise of reasonable diligence, and they ought not to be permitted to lie by, keeping back matters of objection, which are or ought to be known to them, to be taken after a failure to make a meritorious defence.

While, therefore, I fully concur with my brother Smith in regard to the objections, I prefer to put the decision on the ground that the objections were waived by not being seasonably taken, the cases expressly stating that the respondents were under prosecution.

*Exceptions overruled.*